# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ARYAN KAIVANI, derivatively on behalf of BAKKT HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> KAREN ALEXANDER, COLLEEN BROWN, DAVID C. CLIFTON, SEAN COLLINS, DE'ANA DOW, MICHELLE GOLDBERG, ANDREW MAIN, GAVIN MICHAEL, JILL SIMEONE, and GORDON WATSON, <br><br> Defendants, <br><br> and <br><br> BAKKT HOLDINGS, INC., <br><br> Nominal Defendant. | Case No.: <br><br> **Jury Trial Demanded** |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 5

NATURE OF THE ACTION ......................................................................... 5

JURISDICTION AND VENUE .................................................................... 7

PARTIES ........................................................................................................ 9

THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY DUTIES TO THE
COMPANY AND ITS STOCKHOLDERS.............................................. 11

DIRECTOR DEFENDANTS ON THE AUDIT ....................................... 15

AND RISK COMMITTEE OWE ADDITIONAL DUTIES ................... 15

BACKGROUND ......................................................................................... 16

DEFENDANTS BREACH THEIR DUTIES ........................................... 17

      A. The Individual Defendants Cause or Allow the Company to Make
         False and Misleading Statements .................................................. 17

      1. Bakkt's March 25, 2024 Press Release and Form 10-K ................. 18

      2. Bakkt's May 15, 2024 Press Release and Form 10-Q .................... 22

      3. Bakkt's August 14, 2024 Press Release and Form 10-K ................ 25

      4. Bakkt's November 14, 2024 Press Release and Form 10-K ........... 27

      B. Defendants Solicit Proxies Pursuant to a False and Misleading April
         19, 2024 Proxy Statement............................................................... 30

THE MARKET LEARNS THE TRUTH..................................................... 36

AN INVESTOR FILES A SECURITIES CLASS ACTION.................... 37

THE INDIVIDUAL DEFENDANTS'MISCONDUCT DIRECTLY AND
PROXIMATELY CAUSES DAMAGES TO BAKKT ............................ 38

CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION ....... 39

PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE ALLEGED
WRONGDOING AND WILL FAIRLY AND ADEQUATELY REPRESENT THE
COMPANY'S AND ITS STOCKHOLDERS' INTERESTS ................................. 40

DEMAND IS FUTILE.......................................................................................... 41

    A. Demand Is Futile Because Each Member of the ............................... 41

    B. The Audit and Risk Committee Defendants ..................................... 42

    C. Defendant Main Faces an Even Greater Likelihood of Personal
       Liability than Other Director Defendants Because He Is a Securities
       Class Action Defendant .................................................................... 43

    D. Director Defendants Lack Independence ......................................... 44

FIRST CAUSE OF ACTION .................................................................... 46

Against the Individual Defendants for Breach of Fiduciary Duties........................... 46

SECOND CAUSE OF ACTION ................................................................ 49

Against the Securities Class Action Defendants for Violations of Sections 10(b) of
the Exchange Act and Rule 10b-5 ............................................................... 49

THIRD CAUSE OF ACTION ................................................................... 50

Against the Securities Class Action Defendants for Contribution under Sections
10(b) and 21D of the Exchange Act and SEC Rule 10b-5 ...................................... 50

FOURTH CAUSE OF ACTION ................................................................ 51

Against the Individual Defendants for Violations of § 14(a) of the Exchange Act and
SEC Rule 14a-9 ................................................................................. 51

FIFTH CAUSE OF ACTION .................................................................... 53

Against the Individual Defendants for Unjust Enrichment ....................................... 53

SIXTH CAUSE OF ACTION.................................................................... 53

Against all the Individual Defendants for Aiding and Abetting.................................. 53

PRAYER FOR RELIEF.............................................................................................55

JURY TRIAL DEMANDED ....................................................................................56

## **INTRODUCTION**

Plaintiff Aryan Kaivani ("Plaintiff"), by and through his counsel, derivatively on behalf of Nominal Defendant Bakkt Holdings, Inc. ("Nominal Defendant," "Bakkt," or the "Company"), submits this Verified Stockholder Derivative Complaint against Defendants and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which included, *inter alia*, review and analysis of: (i) regulatory filings made by Bakkt with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Bakkt; (iii) a securities class action against certain officers and members of the Company's Board of Directors (the "Board") alleging issuance of false and misleading statements of material fact and the omission of material facts necessary to make other statements made not misleading, between March 25, 2024, and March 17, 2025, (the "Relevant Period") with respect to Bakkt's business, operations, and prospects; and (iv) other publicly available information concerning Bakkt.

## **NATURE OF THE ACTION**

1.      This is a stockholder derivative action asserted on behalf of Nominal Defendant Bakkt against certain officers and the members of the Company's Board for the claims asserted herein to recover damages caused to the Company as described herein.

2.      Bakkt, headquartered in Alpharetta, Georgia, is a technology company which builds software related to the selling, buying, and storage of cryptocurrency. In April 2023, the Company acquired Apex Crypto LLC, a platform for integrated crypto trading, which it renamed Bakkt Crypto. This acquisition provided the Company significant new clients and financial technology partners including Webull Pay LLC ("Webull"). Prior to its acquisition of Bakkt Crypto, revenue generated from the Company's crypto services had been immaterial; however, in the year ending December 31, 2023, revenue from crypto services became a significant driver of the Company's business, accounting for 93.2% of the Company's revenue. Separately, the Company also operates a "Loyalty Solutions" segment which enables point redemption and fulfillment (including travel reservations).

3.      On March 17, 2025, after market close, Bakkt disclosed Webull was terminating its commercial agreement with the Company, effective June 14, 2025. The Company revealed that in the prior nine months ended September 30, 2024 and the full year ended December 31, 2023, Webull made up 74% of Bakkt's crypto services revenue. In that same period, the Company derived 98% of its revenue from crypto services. The Company also disclosed that Bank of America was terminating its loyalty services contract with the Company, effective April 22, 2025. The Company revealed Bank of America made up 17% of Bakkt's loyalty services revenue in the prior nine months ended September 30, 2024. The customer cancellations will collectively result in *a 73% loss in top line revenue going*

*forward*. On this news, the Company's share price fell $3.50 or 27.3%, to close at $9.33 per share on March 18, 2025, on unusually heavy trading volume.

4.    Throughout the Relevant Period, the Individual Defendants (defined below) breached their fiduciary duties by causing or allowing the Company to make materially false and misleading statements regarding Bakkt's business, operations, and prospects.  Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships. As a result of the foregoing, Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

5.    As a direct and proximate result of the misconduct described herein by Individual Defendants, Bakkt has sustained significant damages as explained below.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20D of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder as well as Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or

controversy.  This action is not a collusive one designed to confer jurisdiction on a court of the United States that it would not otherwise have.

7.      This Court has jurisdiction over each Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state and has consented to service in this state.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Bakkt.  Venue is also proper pursuant to 28 U.S.C. § 1401 because Nominal Defendant Bakkt could have sued the same Defendants in this District.

## PARTIES

9.      Plaintiff is a Bakkt stockholder and has continuously held Bakkt stock from the time of the wrongdoing alleged herein until the present. Plaintiff will fairly and adequately represent Bakkt's interest in this action.

10.     Nominal Defendant Bakkt is incorporated under the laws of Delaware, and its principal executive offices are located at 10000 Avalon Boulevard, Alpharetta, Georgia, 30009.  Bakkt's common stock trades on the New York Stock Exchange under the symbol "BKKT."

11.     Defendant Karen Alexander ("Alexander") was the Company's Chief Financial Officer ("CFO") at all relevant times.

12.     Defendant Colleen Brown ("Brown") has served as a member of the Board since July 2024.

13.     Defendant David C. Clifton ("Clifton") has served as a member of the Board since 2021. Prior to that time, Clifton served as Interim Chief Executive Officer for the Company's predecessor, Bakkt Opco Holdings, LLC, formerly known as Bakkt Holdings, LLC (Opoco), from April 2020 to January 2021.

14.     Defendant Sean Collins ("Collins") serves as Chairman of the Board and has served as a member of the Board since 2021. He has served as a member of the Audit, Governance and Nominating Committees since 2021. He served as Chairman of the Compensation Committee from 2021 to April 2024.

15.     Defendant De'ana Dow ("Dow") has served a member of the Board

since April 2022. She has served as a member of the Audit and Risk Committee since 2021.

16.    Michelle Goldberg ("Goldberg") has served as a member of the Board since 2021. She has served as a member of the Audit, Governance and Nominating Committees since 2021.

17.    Defendant Andrew Main ("Main") served as the Company's Chief Executive Officer ("CEO") from March 2024 to March 2025, then as Co-CEO from March 2025 to the present. He has served as a member of the Board since 2021. He has also served as a member of the Compensation Committee since 2021.

18.    Defendant Gavin Michael ("Michael") was the Company's CEO from January 1, 2021, until March 25, 2024.

19.    Defendant Jill Simeone ("Simeone") has served as a member of the Board since April 2022. She has served as a member of the Audit, Governance and Nominating Committees since April 2022, serving as Chairwoman of Governance and Nominating Committees during this time.

20.    Defendant Gordon Watson ("Watson") has served as a member of the Board since 2021.

21.    The following Defendants are hereinafter referred to as the "Individual Defendants": Alexander, Brown, Clifton, Collins, Dow, Goldberg, Main, Michael, Simeone, and Waston.

22.    The following Individual Defendants are collectively referenced herein

as the "Director Defendants": Brown, Clifton, Collins, Dow, Goldberg, Main, Simeone, and Waston.

23.    The following Individual Defendants are collectively referenced herein as the "Officer Defendants": Alexander, Main, and Michael.

24.    The following Individual Defendants are collectively referenced herein as the "Audit and Risk Committee Defendants": Brown, Collins, Dow and Goldberg.

25.    The following Individual Defendants are referenced herein as the "Securities Class Action Defendant": Alexander, Main, and Michael.

26.    The Individual Defendants and Nominal Defendant are collectively referenced in as "Defendants."

## THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

27.    At all times relevant to this case, the conduct of the Individual Defendants was governed by well-recognized rules to protect the Company and its stockholders, the members of the public who had invested in Bakkt.

28.    Because of their positions as officers and/or directors of the Company and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of

good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

29.    The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

30.    Each of the Company's directors owes to the Company and its stockholders the fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

31.    Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

32.    To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Bakkt were required to do the following:

- Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

11

33.    The Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its Stockholders despite their knowledge of the risk of serious injury to the Company.

34.    Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Bakkt.

35.    The Bakkt Board has adopted the Bakkt Holdings, Inc. Code of Business Conduct and Ethics ("Code of Ethics") to deter wrongdoing, which imposes additional duties and responsibilities on the Director Defendants and Officer Defendants.  The purpose of the Code of Ethics is to, among other things, promote "full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with, furnishes or submits to, the Securities and Exchange Commission and in other public communications made by or on behalf of the Company."

36.    The Code of Ethics further states that "employees," including officers and directors, "are responsible for the accurate and complete reporting of financial information … to ensure full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with government agencies or releases to the general public." Further, relevant officers and directors "must maintain all of the Company's books, records, accounts and financial statements in reasonable detail, and reflect the matters to which they relate accurately, fairly and completely.

Furthermore, [they] must ensure that all books, records, accounts and financial statements conform both to applicable legal requirements and to the Company's system of internal controls."

## DIRECTOR DEFENDANTS ON THE AUDIT
## AND RISK COMMITTEE OWE ADDITIONAL DUTIES

37.    The Audit and Risk Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit and Risk Committee, which consisted of Brown, Collins, Dow and Goldberg during the Relevant Period.

38.    Pursuant to the Audit Charter, the overarching duties of the Audit and Risk Committee and its members include the following regarding the Company's Financial Statements and Other Financial Disclosures:

> *1. Quality and Integrity of Financial Statements.* The Committee shall review and discuss with management and the independent auditor: the critical accounting policies and practices used by the Company; any significant changes in the selection or application of the Company's accounting and auditing principles and practices; the accounting treatment to be applied in respect of significant new transactions or other significant events not in the ordinary course of the Company's business; other policies and procedures adopted by the Company to fulfill its responsibilities regarding the presentation of financial statements in accordance with GAAP and applicable rules and regulations of the SEC, including the proper explanation and reconciliation of any non-GAAP measures presented; and any issues that arise with respect to the quality or integrity of the Company's financial statements.

> *2. Annual and Quarterly Financial Statements.* The Committee shall review and discuss with management and the independent auditor the financial statements and related notes, the "Management's Discussion and Analysis of Financial Condition and Results of Operations" and the independent auditor's opinion (if applicable) proposed to be included in the Company's Annual

Report on Form 10-K (the "***Form 10-K***") and Quarterly Reports on Form 10- Q (the "***Forms 10-Q***") and such matters as required to be discussed by applicable auditing and PCAOB standards. The Committee shall make a recommendation to the Board as to whether the financial statements should be included in the Form 10-K and Forms 10-Q.

...

***4. Earnings Releases.*** The Committee shall review and discuss with management the Company's earnings releases. The Committee shall also discuss with management other significant financial information, including guidance, to be provided to the public, analysts or rating agencies.

39.    The Audit Charter also stated that the Audit and Risk Committee "shall discuss with management, the Company's General Counsel and the independent auditor any correspondence with regulators or governmental agencies and any reports or complaints that raise material issues regarding the Company's financial statements, policies or compliance procedures."

## **BACKGROUND**

40.    Bakkt is a technology company which builds software related to the selling, buying, and storage of cryptocurrency. Bakkt launched in 2019 as a trading platform for Bitcoin futures and options. The Company later pivoted to developing a wider array of consumer applications for digital assets. In 2021, Bakkt went public on the New York Stock Exchange via a merger with VPC Impact Acquisition Holdings Inc., a special purpose acquisition company.

41.    In April 2023, the Company acquired Apex Crypto LLC, a platform for integrated crypto trading, which it renamed Bakkt Crypto. This acquisition provided

the Company with significant new clients and financial technology partners including Webull. Prior to its acquisition of Bakkt Crypto, revenue generated from the Company's crypto services had been immaterial; however, in the year ending December 31, 2023, revenue from crypto services became a significant driver of the Company's business, accounting for 93.2% of the Company's revenue. Separately, the Company also operates a "Loyalty Solutions" segment which enables point redemption and fulfillment (including travel reservations).

## DEFENDANTS BREACH THEIR DUTIES
## TO THE COMPANY AND ITS STOCKHOLDERS

42.     Through a series of communications, the Individual Defendants breached their fiduciary duties to Bakkt by causing or allowing the Company to make materially false and misleading statements regarding Company's business, operations, and prospects.  Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships. As a result of the foregoing, Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### A.     The Individual Defendants Cause or Allow the Company to Make False and Misleading Statements

43.     The following statements by Individual Defendants about the Company's business, operations, and prospects were materially false and misleading for the reasons discussed above in paragraph 42 and below at the end of this subsection.

1. **Bakkt's March 25, 2024 Press Release and Form 10-K**

44.     The Relevant Period begins on March 25, 2024.[1] On that day, Bakkt issued a press release announcing the Company's financial results for the quarter and year ended December 31, 2023. The press release touted the Company's full year and fourth quarter financial results including an alleged "***significant increase in gross crypto services revenues driven by our acquisition of Bakkt Crypto.***" Specifically, the press release stated the following, in relevant part:

**Bakkt Reports Fourth Quarter and Full Year 2023 Results**

*Quarterly gross crypto services revenues of $199.4 million and associated crypto costs and execution, clearing and brokerage fees of $197.8 million*

*Quarterly total revenues of $214.5 million include gross crypto revenues and net loyalty revenues; full year total revenues of $780.1 million*

\* \* \*

**Fourth Quarter Financial Highlights (unaudited)**

Fourth quarter 2023 results include Bakkt Crypto (f/k/a Apex Crypto, LLC), which we acquired on April 1, 2023. In accordance with GAAP, we are presenting crypto services revenue and crypto costs and execution, clearing and brokerage fees on a gross basis since we are a principal in those transactions.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

| $ in millions | 4Q23 | 4Q22 | Increase/ (decrease) |
|---|---|---|---|
| Total revenues | $214.5 | $15.9 | N.M. |
| Crypto costs and execution, clearing and brokerage fees | 197.8 | 0.3 | N.M. |
| Goodwill, intangible and long-lived assets impairments | 67.4 | 285.9 | (76%) |
| Operating expenses, excluding crypto costs, execution, clearing and brokerage fees and goodwill, intangible and long-lived assets impairments | 27.8 | 61.7 | (55%) |
| Total operating expenses | 293.0 | 347.9 | (16%) |
| Operating loss | (78.5) | (332.0) | (76%) |
| Net loss | (78.7) | (326.4) | (76%) |
| Adjusted EBITDA loss (non-GAAP) | $(19.0) | $(30.5) | (38%) |

Note: "N.M" denotes Not Meaningful

- Key performance indicators (including historical Bakkt Crypto data for comparison purposes):
  - Crypto enabled accounts of 6.2 million have continued to increase steadily year-over-year.
  - Transacting accounts of 915,000 decreased 39% year-over-year, due to industrywide slowdown in crypto activity.
  - Notional traded volume of $442 million decreased 35% year-over-year, primarily due to lower activity levels from Webull Pay customers and lower loyalty redemption activity in merchandise, travel and gift cards.
  - Assets under custody of $702 million increased 41% year-over-year, due to higher coin prices.
- Total revenues of $214.5 million reflect a significant increase in gross crypto services revenues driven by our acquisition of Bakkt Crypto. Net loyalty revenues of $15.1 million decreased 4% year-over-year driven by lower service revenue.

***

**Full Year Financial Highlights**

| $ in millions | FY23 | FY22 | Increase/ (decrease) |
|---|---|---|---|
| Total revenues | $780.1 | $56.2 | N.M. |
| Crypto costs and execution, clearing and brokerage fees | 722.3 | 1.7 | N.M. |
| Goodwill, intangible and long-lived assets impairments | 90.8 | 1,833.6 | (95%) |
| Operating expenses, excluding crypto costs, execution, clearing and brokerage fees and goodwill, intangible and long-lived assets impairments | 195.0 | 239.9 | (19%) |
| Total operating expenses | 1,008.0 | 2,075.1 | (51%) |
| Operating loss | (227.9) | (2,018.9) | (89%) |
| Net loss | (225.8) | (1,989.9) | (89%) |
| Adjusted EBITDA loss (non-GAAP) | $(93.9) | $(119.7) | (22%) |

- Key performance indicators (including historical Bakkt Crypto

data for comparison purposes):
- o Notional traded volume of $1,974.3 million decreased 49% year-over-year, primarily due to lower industrywide volume and lower activity levels from Webull Pay customers.
- Total revenues of $780.1 million reflect a significant increase in gross crypto services revenues driven by our acquisition of Bakkt Crypto. Net loyalty revenues of $53.1 million decreased 2% year-over-year driven by lower service revenue.
- Total operating expenses of $1,008.0 million reflect a significant increase in crypto costs and execution, clearing and brokerage fees driven by our acquisition of Bakkt Crypto.
- Operating loss of $227.9 million decreased year-over-year due to larger goodwill and intangible assets impairments recorded in the prior year.
- Net loss of $225.8 million decreased year-over-year.
- Adjusted EBITDA loss (non-GAAP) of $93.9 million decreased 22% year-over-year primarily due to a reduction in compensation and benefits costs.

45.     On March 25, 2024, the Company submitted its Annual Report for the full year ended December 31, 2024 on a Form 10-K filed with the SEC, affirming the previously reported financial results (the "FY23 10-K"). The FY23 10-K reported the Company's Disaggregation of Revenue by platform as well as the Company's purported revenue model, wherein "***revenue from crypto services is now a significant driver of our business, and we expect crypto services revenue to increase as we grow our client base and our customers.***" Specifically, the FY23 10-K stated the following, in relevant part:

| Platform | Year Ended December 31, 2023 | Year Ended December 31, 2022 |
|---|---|---|
| Loyalty redemption platform | 53,148 | 54,479 |
| Crypto services(b) | 726,988 | 1,745 |
| Total revenue | $          780,136 | $          56,224 |

***

**Revenue Model**

We primarily generate revenue when clients or their customers use our services to buy, sell and/or store crypto or transact in loyalty points across our platform in the following key areas:

• *Subscription and service revenue.* We receive a recurring subscription revenue stream from client platform fees as well as service revenue from software development fees and call center support.

• *Transaction revenue.* We generate transaction revenue from crypto buy/sell transactions, where we charge a markup on both legs of the transaction, and through loyalty redemption volumes, where we earn a margin from the difference of the value of the points being redeemed and the cost of fulfilling the redemption request.

Our loyalty revenue has seasonality and is typically higher in the fourth quarter, driven by holiday spending and the travel bookings.

***Revenue generated from our crypto services had been immaterial prior to our acquisition of Bakkt Crypto; however, revenue from crypto services is now a significant driver of our business, and we expect crypto services revenue to increase as we grow our client base and our customers. As a result of our acquisition of Bakkt Crypto, we expect loyalty revenue, which prior to the Bakkt Crypto acquisition was the source of substantially all of our revenue, to be a smaller percentage of overall revenue in the future as the revenue grows from our crypto product and service offerings.***

46.    The FY23 10-K further touted the Company's purported growth prospects, ability to service growing customers, and partner relationships, stating as follows in relevant part:

We go to market using a platform strategy, driven by our clients. ***We partner with leading companies and expect to grow customers on our platform through those relationships, in addition to our direct institutional clients. We have already built an extensive network of clients across numerous industries including financial institutions, merchants and travel and entertainment.*** These clients include Webull, Public.com, Blockchain.com, Swan Bitcoin, and Caesars. We believe this strategy will enable us to add transacting accounts and volume more quickly and more efficiently than a direct-to-consumer model, given our limited operating history and the novelty of the crypto space for some customers.

***As part of this approach, we have developed our platform to be flexible and scalable to accommodate how different clients may want to***

***implement our solutions.*** Depending on each client's specific needs and objectives, that client can choose to add one, some or all of our capabilities, and can also choose the manner in which those capabilities are enabled. Clients can choose to fully or partially embed our capabilities directly through Bakkt hosted user interfaces such as our Custody client portal.

We believe our growth will come from adding clients and correspondingly, their customers, and increasing transaction activity as well as strategic acquisitions. Our acquisition of Bakkt Crypto has provided scale and meaningful transaction volume from Bakkt Crypto's active client base which we are working to leverage to sell additional products and services on the same platform. Leveraging Bakkt Crypto's proprietary trading platform and existing relationships with liquidity providers, we provide a wide range of assets and competitive pricing to our clients.

47.     The FY23 10-K also purported to warn of the Company "dependence

on a limited number of clients," stating as follows, in relevant part:

***A large percentage of our revenue is concentrated with a small number of clients; the loss of any such client would materially and adversely affect our business, financial condition, results of operations and future prospects. Moreover, because of our B2B2C go-to-market model, the loss of any client –regardless of the reason – increases the risk that the customers that originally emanated from that client will transition to another provider or stop doing business with us, which would harm our business.***

The concentration of a significant portion of our business and transaction volume with a limited number of clients exposes us disproportionately to the risk of any of those clients choosing to no longer partner with us, to the economic performance of such clients or their respective industries or to any events, circumstances, or risks affecting such clients or their respective industries. Any such loss could make our platform less appealing to existing and potential customers. Accordingly, the loss of any significant client relationship could materially and adversely affect our business, results of operations, financial condition and future prospects.

## 2.     Bakkt's May 15, 2024 Press Release and Form 10-Q

48.     On May 15, 2024, Bakkt issued a press release announcing the

Company's results for the quarter ended March 31, 2024. The press release touted the Company's first quarter 2024 financial results, including the Company's alleged "***significant increase in gross crypto services revenues driven by the acquisition of Bakkt Crypto.***" Specifically, the press release stated as follows, in relevant part:

- $854.6 million total revenues including gross crypto revenues and net loyalty revenues
- Strong client crypto trading activity with notional traded volume up 324% quarter-over-quarter

- $48.8 million operating expenses excluding crypto costs, execution, clearing and brokerage fees, down 16% year-over-year

\*\*\*

**Key Performance Indicators (including historical Bakkt Crypto data):**

• ***Crypto enabled accounts grew to 6.3 million, up 9% YoY.***
• ***Transacting accounts decreased 34% year-over-year to 779,000, due to lower loyalty redemption and active crypto trading accounts.***
• Notional traded volume increased 64% year-over-year to $1,041 million, primarily due to strong crypto trading volume partially offset by lower loyalty redemption activity in travel and gift cards.
• Assets under custody increased 76% year-over-year to $1,233 million, due to higher coin prices.

**First Quarter 2024 Financial Highlights (unaudited):**

• Total revenues of $854.6 million reflect a ***significant increase in gross crypto services revenues driven by the acquisition of Bakkt Crypto***. Net loyalty revenues of $13.2 million increased 4% year-over-year driven by higher service revenue.

\* \* \*

First quarter 2024 results include Bakkt Crypto (f/k/a Apex Crypto, LLC), acquired on April 1, 2023. In accordance with GAAP, crypto services revenue and crypto costs and execution, clearing and brokerage fees are presented on a gross basis as the Company is a principal in those transactions.

| $ in millions | 1Q24 | 1Q23 | Increase/ (decrease) |
|---|---|---|---|
| Total revenues | $854.6 | $13.2 | N.M. |
| Crypto costs and execution, clearing and brokerage fees | 837.6 | 0.4 | N.M. |
| Operating expenses, excluding crypto costs and execution, clearing and brokerage fees | 48.8 | 58.3 | (16%) |
| Total operating expenses | 886.4 | 58.7 | 1411% |
| Operating loss | (31.8) | (45.4) | (30%) |
| Net loss | (21.3) | (44.9) | (53%) |
| Adjusted EBITDA loss (non-GAAP) | $(16.3) | $(28.9) | (44%) |

Note: "N.M" denotes Not Meaningful

49.    On May 15, 2024, the Company submitted its quarterly report for the period ended March 31, 2024, on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report further reported the Company's Disaggregation of Revenue by platform and touted the Company's clients and its purported "***extensive network across numerous industries***" as well as the Company's alleged ability to "***meet the capability demands of our clients.***" Specifically, the quarterly report stated as follows, in relevant part:

| Platform | Three Months Ended March 31, 2024 | | Three Months Ended March 31, 2023 | |
|---|---|---|---|---|
| Loyalty redemption platform, net | | 13,242 | | 12,776 |
| Crypto services | | 841,340 | | 443 |
| Total revenue | $ | 854,582 | $ | 13,219 |

***

***Key Factors Affecting Our Performance***

**Growing Our Client Base**

Our ability to increase our revenue stream depends on our ability to grow clients on our platform. ***We collaborate with leading brands and have built an extensive network across numerous industries including financial institutions, merchants and travel and entertainment.*** To date, management has been focused on building through clients within a business-to-business-to-consumer ("B2B2C") model. Our goal is to provide these clients opportunities to leverage our capabilities either through their existing environment or by leveraging our platform. Our acquisition of Bakkt Crypto Solutions complements our B2B2C growth strategy by broadening our business partnerships to fintechs and neo-banks.

**Product Expansion and Innovation**

The crypto marketplace is rapidly evolving. We believe our ability to continue innovating our platform will increase the attractiveness of our platform to clients. ***Our ability to meet the capability demands of our clients will allow us to continue to grow revenue.***

###### 3.    Bakkt's August 14, 2024 Press Release and Form 10-K

50.    On August 14, 2024, Bakkt issued a press release announced the Company's financial results for the quarter ended June 30, 2024. The press release touted the Company's second quarter 2024 financial results, including the Company's alleged "increase in gross crypto services revenues driven by the acquisition of Bakkt Crypto." Specifically, the press release stated as follows, in relevant part:

***$509.9 million total revenues including gross crypto revenues and net loyalty revenues***

$36.8 million operating expenses excluding crypto costs, execution, clearing and brokerage fees, down 43.1% year-over-year, 24.6% sequentially

***

**Key Performance Indicators:**

• Crypto enabled accounts grew to 6.4 million, up 6.7% YoY.

• Transacting accounts decreased 39.1% year-over-year to approximately 719,281, primarily due to a large customer's reduced activity in international markets.

• Notional traded volume increased 26.6% year-over-year to $672 million, primarily due to higher trading prices for crypto assets.

• Assets under custody increased 47.7% year-over-year to $975 million, primarily due to higher trading prices for crypto assets.

**Second Quarter 2024 Financial Highlights (unaudited):**

• Total revenues of $509.9 million reflect an ***increase in gross crypto services revenues driven by Bakkt Crypto***. Net loyalty revenues of $12.8 million increased 4% year-over-year driven by higher subscription and services revenue.

*\*\*\**

| $ in millions | 2Q24 | 2Q23 | Increase/ (decrease) |
|---|---|---|---|
| Total revenues[1] | $509.9 | $347.6 | 46.7% |
| Crypto costs and execution, clearing and brokerage fees | 495.1 | 334.0 | 48.2% |
| Operating expenses, excluding crypto costs and execution, clearing and brokerage fees | 36.8 | 64.7 | (43.1%) |
| Total operating expenses | 531.9 | 398.7 | 33.4% |
| Operating loss | (22.0) | (51.1) | (56.9%) |
| Net loss | (35.5) | (50.5) | (29.7%) |
| Adjusted EBITDA loss (non-GAAP) | ($17.9) | ($24.5) | (26.9%) |

Note: "N.M" denotes Not Meaningful

51.    On August 14, 2024, the Company submitted its quarterly report for the period ended June 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report further reported the

Company's Disaggregation of Revenue by platform and touted the Company's clients and its purported "***extensive network across numerous industries***" as well as the Company's alleged ability to "***meet the capability demands of our clients.***" Specifically, the quarterly report stated as follows, in relevant part:

| Platform | Three Months Ended June 30, 2024 | Three Months Ended June 30, 2023 | Six Months Ended June 30, 2024 | Six Months Ended June 30, 2023 |
|---|---|---|---|---|
| Loyalty redemption platform, net | $ 12,757 | $ 12,296 | $ 25,999 | $ 25,072 |
| Crypto services | 497,141 | 335,333 | 1,338,481 | 335,776 |
| Total revenue | $ 509,898 | $ 347,629 | $ 1,364,480 | $ 360,848 |

\*\*\*

### *Key Factors Affecting Our Performance*

### Growing Our Client Base

Our ability to increase our revenue stream depends on our ability to grow clients on our platform. ***We collaborate with leading brands and have built an extensive network across numerous industries including financial institutions, merchants and travel and entertainment.*** To date, management has been focused on building through clients within a business-to-business-to-consumer ("B2B2C") model. Our goal is to provide these clients opportunities to leverage our capabilities either through their existing environment or by leveraging our platform. Our acquisition of Bakkt Crypto Solutions complements our B2B2C growth strategy by broadening our business partnerships to fintechs and neo-banks.

### Product Expansion and Innovation

The crypto marketplace is rapidly evolving. We believe our ability to continue innovating our platform will increase the attractiveness of our platform to clients. ***Our ability to meet the capability demands of our clients will allow us to continue to grow revenue.***

4.    **Bakkt's November 14, 2024 Press Release and Form 10-K**

52.    On November 14, 2024, Bakkt issued a press release announcing the

Company's results for the quarter ended September 30, 2024. The press release touted the Company's third quarter 2024 financial results, including the Company's alleged "*increase in gross crypto services revenues driven by the acquisition of Bakkt Crypto.*" Specifically, the press release stated as follows, in relevant part:

**Third Quarter 2024 Key Performance Indicators:**

• *Crypto enabled accounts grew to 6.5 million, up 6.7% year-over-year.*

• *Notional traded volume increased 30.1% year-over-year to $476.5 million, primarily due to stronger crypto market activity.*

• Assets under custody increased 85.5% year-over-year to $938.7 million, primarily due to higher trading prices for crypto assets.

• Loyalty transacting accounts decreased 41.6% year-over-year to approximately 610,568, primarily due to a credit card program divestiture by a large loyalty client.

**Third Quarter 2024 Financial Highlights (unaudited):**

• *Total revenues of $328.4 million reflect an increase in gross crypto services revenues driven by Bakkt Crypto. Net loyalty revenues of $12.1 million decreased 7.2% year-over-year driven by lower notionally traded volume and redemption.*

* * *

• Operating loss of $27.4 million improved 48.2% year-over-year primarily due to the lapse of a $23.3 million goodwill and intangible asset impairment in third quarter of 2023 along with higher crypto services revenue, and lower compensation, SG&A and acquisition related costs.

• Net loss improved 87.8% year-over-year to $6.3 million as the third quarter of 2024 benefited from a $20.0 million gain on the fair value of warrant liability.

• Adjusted EBITDA loss (non-GAAP) increased 9.7% year-over-year to $23.7 million as the second half of 2023 benefited from a temporary brokerage business revenue share adjustment with WeBull and a decrease in loyalty revenue.

| $ in millions | 3Q24 | 3Q23 | Increase/ (decrease) |
|---|---|---|---|
| Total revenues[1] | $328.4 | $204.8 | 60.4% |
| Crypto costs and execution, clearing and brokerage fees | 315.0 | 190.1 | 65.8% |
| Operating expenses, excluding crypto costs and execution, clearing and brokerage fees | 40.8 | 67.5 | (39.7%) |
| Total operating expenses | 355.8 | 257.6 | 38.1% |
| Operating loss | (27.4 | (52.9) | (48.2%) |
| Net loss | (6.3) | (51.7) | (87.8%) |
| Adjusted EBITDA loss (non-GAAP) | ($23.7) | ($21.6) | (9.7%) |

53.    On November 14, 2024, the Company submitted its quarterly report for the period ended September 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report further reported the Company's Disaggregation of Revenue by platform and touted the Company's clients and its purported "***extensive network across numerous industries***" as well as the Company's alleged ability to "***meet the capability demands of our clients.***" Specifically, the quarterly report stated as follows, in relevant part:

| Platform | Three Months Ended September 30, 2024 | Three Months Ended September 30, 2023 | Nine Months Ended September 30, 2024 | Nine Months Ended September 30, 2023 |
|---|---|---|---|---|
| Loyalty redemption platform, net | $ 12,086 | $ 13,024 | $ 38,085 | $ 38,096 |
| Crypto services | 316,333 | 191,750 | 1,654,814 | 527,526 |
| Total revenue | $ 328,419 | $ 204,774 | $ 1,692,899 | $ 565,622 |

***

*** Key Factors Affecting Our Performance***

**Growing Our Client Base**

Our ability to increase our revenue stream depends on our ability to grow clients on our platform. ***We collaborate with leading brands and have built an extensive network across numerous industries including financial institutions, merchants and travel and entertainment.*** To date, management has been focused on building through clients within a B2B2C model. Our goal is to provide these clients opportunities to leverage our capabilities either through their existing environment or by leveraging our platform. Our acquisition of Bakkt Crypto Solutions complements our B2B2C growth strategy by broadening our business partnerships to fintechs and neobanks.

**Product Expansion and Innovation**

The crypto marketplace is rapidly evolving. We believe our ability to continue innovating our platform will increase the attractiveness of our platform to clients.

***Our ability to meet the capability demands of our clients will allow us to continue to grow revenue.***

54.    The above statements identified in ¶¶ 42-51 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships. As a result of the foregoing, Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**B.    Defendants Solicit Proxies Pursuant to a False and Misleading April 19, 2024 Proxy Statement**

55.    On April 19, 2024, Bakkt filed a Schedule 14A with the SEC (Bakkt Holdings, Inc., Proxy Statement (Form DEF 14A) ("2024 Proxy Statement")).

56.     The Director Defendants (Clifton, Collins, Dow, Goldberg, Main, Simeone, and Watson) solicited proxies to vote at the 2024 annual meeting of Bakkt stockholders pursuant to the 2024 Proxy Statement.  The 2024 Proxy Statement also contained material misstatements and omissions.

57.     The 2024 Proxy Statement asked Bakkt stockholders to vote to, among other things: (1) reelect Defendants Colins and May to the Board for a term to expire at the 2027 Annual Meeting of Stockholders; (2) ratify the appointment of Grant Ernst & Young LLP as Bakkt's independent registered public accounting firm for the year ending December 31, 2024; (3) approve a corporate amendment to increase the number of authorized shares; and (4) approve a proposal to adopt simple majority voting.  The 2024 Proxy Statement further stated that Bakkt's stockholders "will also consider and act upon such other matters as may properly come before the meeting, or any adjournment or postponement thereof."

58.     In Defendant Collins's letter to the stockholders included with the 2024 Proxy Statement, Collins praised the Company's progress with partners and clients, stating in part:

> 2023 was an inflection point for Bakkt, and I believe that the investments as well as the tough decisions we have made this past year have set Bakkt up to capitalize on the market opportunity in crypto. ***Specifically, we have solidified our path forward as a B2B2C-focused company and built out our partner ecosystem.*** And we have brought in a new CEO with a track record of growth. With these actions in place, we continue to focus on creating stockholder value by offering trustworthy capabilities that solve business needs.
>
> 2023 brought some significant macroeconomic headwinds in the crypto

sector, but it also created opportunities, as evidenced by our acquisition of Apex Crypto. ***With the Apex integration, we are positioned to be the crypto infrastructure provider of choice for a wide range of businesses including fintechs, traditional financial institutions, neobanks, merchants and entertainment***.

The regulatory environment for cryptocurrency continues to evolve, which we believe is good news for Bakkt – we were built with an understanding of the risks of crypto and have developed a robust compliance framework, allowing us to differentiate our offerings from those of our competitors. Our team has been engaging in dialogue with varying levels of government and regulatory bodies to educate them on Bakkt and our approach to risk management and security, and to showcase Bakkt as an industry leader in responsible crypto innovation.

59.    This statement was false and misleading because the Company had not materially built out its partner ecosystem. The Company would later disclose a single client, Bank of America, made up approximately 16% of its loyalty services platform. Neither was Bakkt positioned to be the provider of choice "for a wide range of business" that would have material effect on the Company's financial performance. Bakkt Company would later disclose a single client, Webull, made up nearly three fourths of the Bakkt's crypto service revenue.

60.    This statement was additionally materially false and misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships.

61.    The 2024 Proxy Statement also included a letter from Defendant Main, who similarly implied material growth in a diversified client base:

In my first few weeks *I have had the pleasure of meeting many of our clients, all of whom appreciate the value Bakkt brings - as their partner in growth.* Simply put, as our clients grow, we also grow. This value proposition is made possible by the strong, secure ecosystem of products our team has built, which are differentiated in the market. Building off this robust foundation, we have much to look forward to, as we work to scale and grow the business.

***

[I]n the first quarter of 2024, *we saw higher transaction volumes from our retail clients. I am also pleased to say that our platform is efficiently scaling to meet this growing demand.* Additionally, thanks to the company's recent capital raise, we fortified our balance sheet so we can continue focusing on building momentum and enhancing shareholder value.

*Across Bakkt's core custody and trading solutions, we have a strong offering that appeals to a wide variety of clients.* In the year ahead, your Bakkt team will focus on three key strategic priorities – growing our client network and deepening existing relationships, strategically expanding the Bakkt product ecosystem, and prudently managing expenses. I am very proud of what our team has accomplished thus far, and believe these priorities will put us on a path to profitability.

62.     This statement was materially false and misleading because it framed Bakkt as a partner in growth to the Company's purported "many" clients, when such material relationships did not exist. The statements were also false and misleading in claiming that there was a "higher transaction volumes from our retail clients" and an appealing to a "wide variety of clients" when such volume or appeal had not material effect on "enhancing shareholder value."

63.     This statement was also materially false and misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services

revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

64.     Under the section entitled "Corporate Governance Guidelines," the 2024 Proxy Statement stated as follows:

> Our Board has adopted corporate governance guidelines. These guidelines address, among other items, the qualifications and responsibilities of our directors and director candidates, the structure and composition of our Board and corporate governance policies and standards applicable to us in general.

65.     The 2024 Proxy Statement stated that the Code of Ethics "applies to all of our employees, officers and directors, including our chief executive officer, chief financial officer and other executive and senior financial officers."

66.     With regard to the Board's role in risk oversight, the 2024 Proxy Statement stated as follows:

> Risk is part of every business. Bakkt's business has several inherent risks, including strategic, financial, business, operational, legal, regulatory, compliance and reputational. We have designed and implemented processes to manage risk in our operations. Management is responsible for the day-to-day management of risks the company faces, while our Board, as a whole and assisted by its committees, has responsibility for the oversight of risk management, reviewing, evaluating and discussing strategic and operational risk, cybersecurity risks, among other risks, receives reports from management and on all significant committee activities at each regular board meeting, and evaluates the risks inherent in significant transactions.
>
> The committees of the Board also assist the Board in fulfilling its oversight responsibilities in certain areas of risk. The audit and risk committee assists in fulfilling the oversight responsibilities with respect to management of major risk exposures, including in the areas of financial reporting and internal controls, and has general oversight over cybersecurity risks. Risk assessment reports are regularly provided by

management to the audit committee. The compensation committee assists in fulfilling oversight responsibilities with respect to the management of risks arising from our compensation policies and programs. The nominating and corporate governance assists in fulfilling oversight responsibilities with respect to the management of risks associated with the Board's organization, membership and structure and corporate governance. All of the committees report back to the Board on the committees' activities and matters discussed and reviewed at the committees' meetings.

67.    The 2024 Proxy Statement stated that the Audit and Risk Committee "operates under a written charter that satisfies the applicable rules and regulations of the SEC and the listing standards of the NYSE" whose were responsible the following:

- selecting a qualified firm to serve as the independent registered public accounting firm to audit our financial statements;
- helping to ensure the independence and performance of the independent registered public accounting firm;
- discussing the scope and results of the audit with the independent registered public accounting firm and reviewing, with management and the independent registered public accounting firm, our interim and year-end financial statements;
- developing procedures for employees to submit concerns anonymously about questionable accounting or audit matters;
- reviewing our policies on and overseeing risk assessment and risk management, including enterprise risk management;
- reviewing related party transactions;
- reviewing the adequacy and effectiveness of internal control policies and procedures and our disclosure controls and procedures; and
- approving or, as required, pre-approving, all audit and all permissible non-audit services, other than de minimis non-audit services, to be performed by the independent registered public accounting firm.

68.    These statements were materially misleading. Despite claims of adherence to the Code of Ethics, the Individual Defendants violated the Code by issuing false and misleading statements about the Company's business and financial

condition. Contrary to the descriptions of the Board's risk oversight responsibilities, the Board and the Audit and Risk Committee did not adequately exercise these functions and were causing or permitting Bakkt Factory to issue false and misleading statements. The statements about the Audit and Risk Committee's responsibilities were misleading because the Committee failed to properly oversee the Company's financial reporting and risk management processes, allowing the issuance of false and misleading statements.

69.    The 2024 Proxy Statement was further materially misleading because it failed to disclose, *inter alia*, This statement was materially false and misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Individual Defendants: (1) misrepresented the stability and/or diversity of its crypto services revenue; (2) failed to disclose Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) misrepresented its ability to maintain key client relationships. As a result of these undisclosed facts, Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

## THE MARKET LEARNS THE TRUTH

70.    On March 17, 2025, after market close, Bakkt issued a press release which disclosed Webull was terminating its commercial agreement with the Company, effective June 14, 2025. The Company revealed that in the prior nine months ending September 30, 2024 and the full year ending December 31, 2023, ***Webull made up***

***74% of Bakkt's crypto services revenue***. In that same period, the Company derived 98% of its revenue from crypto services. The Company also disclosed that Bank of America was terminating its loyalty services contract with the Company, effective April 22, 2025. The Company revealed Bank of America made up 17% of Bakkt's loyalty services revenue in the prior nine months ended September 30, 2024. The customer cancellations will collectively result in **a 73% loss in top line revenue going forward.** Specifically, the press release stated the following, in relevant part:

> Bakkt Holdings, Inc. (the "Company") received notice from Bank of America, N.A. ("Bank of America") that Bank of America would not renew its commercial agreement with the Company. As a result, such agreement will expire in accordance with its terms on April 22, 2025, subject to the Company's obligation to maintain services for up to a 12-month transition period. Bank of America represented approximately 16% and 17% of the Company's loyalty services revenue in in the year ended December 31, 2023 and the nine months ended September 30, 2024, respectively.

> The Company also received notice from Webull Pay LLC ("Webull") that Webull will not renew its commercial agreement with the Company. As a result, such agreement will expire in accordance with its terms on June 14, 2025. Webull represented approximately 74% of the Company's crypto services revenue in boththe year ended December 31, 2023 and the nine months ended September 30, 2024.

71.     On this news, the Company's share price fell $3.50 or 27.3%, to close at $9.33 per share on March 18, 2025, on unusually heavy trading volume.

72.     Then, on March 20, 2025, the Company revealed that the loss of Webull "raise[s] substantial doubt about [the Company's] ability to meet our obligations for at least 12 months from the date of issuance of these consolidated financial statements."

## AN INVESTOR FILES A SECURITIES CLASS ACTION

73.     On March 2, 2025, a purported purchaser of Company stock filed a

securities class action complaint captioned *Franklin v. Bakkt Holdings, Inc.. et al.*, Case No. 1:25-cv-02753 in the Southern District of New York against Bakkt and former CEO Gavin Michael, Chief Financial Officer Karen Alexander, and Main (the "Securities Class Action"). The original complaint in the Securities Class Action alleges that throughout the class period of March 25, 2024 and March 17, 2025, Defendants made materially false and/or misleading statements, failing to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the original complaint alleges that defendants misled investors concerning the stability and diversity of its clients and crypto currency service revenues.

74.     On May 7, 2025, the Securities Class Action was transferred to the Northern District of Georgia under the same caption and given the Case No. 1:25-cv-02520.

## THE INDIVIDUAL DEFENDANTS'MISCONDUCT DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO BAKKT

75.     As a result of the Individual Defendants' improprieties, Bakkt disseminated improper public statements concerning the Company's operations, prospects, and internal controls. This misconduct has devastated Bakkt's credibility.

76.     As a direct and proximate result of the Individual Defendants' actions, Bakkt has expended, and will continue to expend, significant sums of money defending and paying any settlement in the Securities Class Action.

77.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Bakkt's market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

78.     Lastly, the actions of the Individual Defendants have irreparably damaged Bakkt's corporate image and goodwill. For at least the foreseeable future, Bakkt will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Bakkt's ability to negotiate new customer contracts on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

79.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

80.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

81.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to engage in improper accounting methods,

conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, Individual Defendants collectively and individually took the actions set forth herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

82.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

83.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Bakkt and was at all times acting within the course and scope of such agency.

**PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS**

84.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

85.    Plaintiff brings this action derivatively in the right and for the benefit of

the Company to redress the Individual Defendants' misconduct.

86.     Plaintiff is an owner of Bakkt common stock and has been an owner of Bakk common stock since the wrongdoing alleged herein.

87.     Plaintiff has retained counsel experienced in conducting complex litigation and will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

## DEMAND IS FUTILE

### A.     Demand Is Futile Because Each Member of the Board Faces a Substantial Likelihood of Personal Liability

88.     At the time Plaintiff commenced this action, the Board consisted of the nine Director Defendants: Brown, Clifton, Collins, Dow, Goldberg, Main, Naheta, Simeone, and Waston.

89.     The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

90.     The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning Bakkt's business, operations, prospects, internal controls, and financial statements.

91.     Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective and

were being implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

92.    The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability.

93.    If the Director Defendants were to bring a suit on behalf of the Company to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. For this reason, Plaintiff's making a demand would be futile.

### B.    The Audit and Risk Committee Defendants Face a Greater Likelihood of Personal Liability

94.    The Audit and Risk Committee Defendants (Brown, Collins, Dow and Goldberg), as members of the Audit and Risk Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements.  More

specifically, as members of the Audit and Risk Committee, the Audit and Risk Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, the Audit and Risk Committee Defendants, as members of the Audit and Risk Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process and its systems of internal accounting and financial controls and other financial information provided by the Company as required by the Audit and Risk Committee Charter. For this reason, the Audit and Risk Committee Defendants cannot exercise disinterested business judgment in considering a demand.

### C. Defendant Main Faces an Even Greater Likelihood of Personal Liability than Other Director Defendants Because He Is a Securities Class Action Defendant

95. Main is incapable of considering a demand to commence and vigorously prosecute this action because he faces an additional substantial likelihood of liability as a defendant in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act as well as SEC Rule 10b-5 promulgated under the Exchange Act.

96. If Bakkt is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and directors of Bakkt. Hence, Main is incapable of considering a demand to commence and vigorously prosecute this action because he faces an even greater likelihood of personal liability than the rest of Defendants.

### D. Director Defendants Lack Independence

97.     The 2024 Proxy Statement expressly acknowledges that Defendants Clifton, Main and Watson are not independent directors under New York Stock Exchange Listing Rules. Further, Main is not independent because, during the Relevant Period, his principal occupation was CEO of Bakkt. Clifton is not independent because he served as Interim CEO for the Company's predecessor, Bakkt Opco Holdings, LLC (f/k/a Bakkt Holdings, LLC ("Opco")), from April 2020 to January 2021. While serving in this role, Clifton was involved in the development of strategy and the assessment of its strategic alternatives, which resulted in (now) Bakkt's business combination with special purpose acquisition company VPC Impact Acquisition Holdings ("VPC"), resulting in the Company's listing as a public company. Watson is not independent because, prior to the business combination with VPC, Watson served on the Board and as President and CEO. In these roles, Clifton, Main and Watson have and/or continue to derive substantial monetary gain in the form of salary, stock awards and other compensation. These amounts are material to Clifton, Main and Watson. With respect to Main in particular, he would not be able to impartially consider a demand against the Director Defendants who are members of the Bakkt Compensation Committee (Brown and Simeone) and thus approve his executive compensation. Accordingly, demand is futile as to Defendant Clifton, Main and Watson.

98.     Director Defendant Dow has served as a member of the Board since April 2022. Dow has also been fully employed by Capitol Counsel LLC ("Capitol Counsel") since 2012. She also presently serves as a partner at the full-service

government relations firm. Capital Counsel lobbies government officials and agencies on behalf of financial technology, service, and trading platforms—companies that fit same or similar profile as Bakkt. With this focus, Dow would not be able to impartially consider a demand against the Director Defendants. Taking legal action against a financial platform, particularly, the platform's decision makers (of the type responsible for engaging lobbyists), would risk a chilling effect on Dow's livelihood. Capital Counsel's would risk its clients discontinuing engagements because Dow's conduct would be contrary to lobbying efforts. Accordingly, demand is futile as to Defendant Dow.

99.     Defendant Goldberg has served as a member of the Board since 2021. She is presently Chairman of the Audit and Risk committee, as well as a member of the Governance and Nominating committees. In 2025, Goldberg became a director of Ally Financial Inc. ("Ally"). Like Defendant Dow, Goldberg would not be able to impartially consider a demand against Director Defendants, when her professional career is heavily dependent on service as a board director to financial technology companies. Goldberg's role at Ally adds to the litany of her other demanding, present responsibilities including, partner at Ignition Partners LLC, board member of Merchantbuilder Corp., and board member of TrackSimple. Further, the time demanded by these companies make it unfeasible that Golberg can sufficiently oversee Bakkt and create insufficient capacity to properly consider a demand upon the Director Defendants. Accordingly, demand is futile as to Defendant Dow.

100.     Defendant Brown has served as a member of the Board since 2024, a

material portion of the Relevant Period. She is presently Chairman of the Compensation committee and a member of the Audit and Risk Committee as well as a member of the Governance and nominating committee. Like Defendants Dow and Goldberg, Brown would not be able to impartially consider a demand against Director Defendants, when her professional career is heavily dependent on service as a board director to financial technology companies. Brown's catalog of other present professional responsibilities include Chairwoman of the board and Audit committee member at App Windown LLC, Chairwoman of the board at Spark Networks, Inc., and member of the board at Big 5 Sporting Goods Corp. Further, the time demanded by these companies make it unfeasible that Golberg can sufficiently oversee Bakkt and create sufficient capacity to properly consider a demand upon the Director Defendants. Accordingly, demand is futile as to Defendant Dow.

**FIRST CAUSE OF ACTION**
**Against the Individual Defendants for**
**<u>Breach of Fiduciary Duties</u>**

101.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein.

102.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Bakkt's business and affairs.

103.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and

supervision.

104.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Bakkt.

105.    In breach of their fiduciary duties owed to Bakkt, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*: (1) the stability and/or diversity of its crypto services revenue; (2) Bakkt's Crypto services revenue was substantially dependent on a single contract with Webull; and (3) its ability to maintain key client relationships. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

106.    Accordingly, Bakkt's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

107.    The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby, rendering themselves personally liable to the Company for breaching their fiduciary duties.

108.    The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their

fiduciary duties.

109.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts even though such facts were available to them.  Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

110.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls.  The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.  Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.  The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

111.    These actions were not a good-faith exercise of prudent business

judgment to protect and promote the Company's corporate interests.

112.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Bakkt has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**SECOND CAUSE OF ACTION**
**Against the Securities Class Action Defendants for**
**<u>Violations of Sections 10(b) of the Exchange Act and Rule 10b-5</u>**

113.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein.

114.    The Securities Class Action Defendants are liable to the Company because they violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

115.    The Securities Class Action Defendants did the following while acting individually and collectively:

a.    employed devises, schemes, and artifices to defraud;

b.    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Company in connection with its purchases of Bakkt common stock during the Relevant Period.

116.    As set forth above, the Securities Class Action Defendants disseminated

or approved the dissemination of materially false and misleading statements while also failing to disclose material facts necessary to make the statements made not misleading under the circumstances.

117.    The Securities Class Action Defendants knew or recklessly disregarded facts showing that these statements were false and misleading because they received or had access to such information.

118.    As a result of the Securities Class Action Defendants making these materially false and misleading statements or permitting them to be made, BAKKT's common stock traded at artificially inflated prices during the Relevant Period.

**THIRD CAUSE OF ACTION**
**Against the Securities Class Action Defendants**
**for Contribution under Sections 10(b) and 21D**
**of the Exchange Act and SEC Rule 10b-5**

119.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein

120.    Bakkt along with the Securities Class Action Defendants (Alexander, Main, and Michael) are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5. If the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and/or directors of Bakkt.

121.    Because of their position of control and authority as officers and/or directors of Bakkt, the Securities Class Action Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Bakkt, including the wrongful acts complained of herein and in the Securities Class Action.

122.    Accordingly, the Securities Class Action Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, which create an implied private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

123.    As such, Bakkt is entitled to receive all appropriate contribution or indemnification from the Securities Class Action Defendants.

### FOURTH CAUSE OF ACTION
### Against the Individual Defendants for
### Violations of § 14(a) of the Exchange Act and SEC Rule 14a-9

124.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein .

125.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

126.    The 2024 Proxy Statement violated Section 14(a) and Rule 14a-9

because they solicited Bakktt stockholder votes for, *inter alia*, director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's shortcomings in connection with Bakkt's financial reporting, risk management, internal controls, and business operations.

127.    The Individual Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) and Rule 14a-9. By virtue of their positions within the Company and roles in the process and in the preparation of the 2024 Proxy Statement, the Individual Defendants were aware of this information and of their duty to disclose this information in the 2024 Proxy Statement.

128.    The Individual Defendants knew that the statements contained in the 2024 Proxy Statement were materially false and misleading.

129.    The omissions and false and misleading statements in the 2024 Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the re-election of directors. Indeed, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 2024 Proxy Statement and in other information reasonably available to stockholders.

130.    As a direct and proximate result of the dissemination of the false and misleading 2024 Proxy Statement that the Individual Defendants used to obtain stockholder approval of and thereby re-elect directors, Nominal Defendant Bakkt suffered damage and actual economic losses (*i.e.*, wrongful re-election of directors) in

an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Against the Individual Defendants for
### <u>Unjust Enrichment</u>

131.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein.

132.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Bakkt.

133.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and received bonuses, stock options, or similar compensation from Bakkt that was tied to the performance or artificially inflated valuation of Bakkt, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

134.    Plaintiff, as a stockholder and representative of Bakkt, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

135.    Plaintiff, on behalf of Bakkt, has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### Against all the Individual Defendants for
### <u>Aiding and Abetting</u>

136.    Plaintiff repeats, realleges, and reincorporates the allegations in Paragraphs 1-100 as though fully set forth herein.

137.    Each of the Individual Defendants acted and is acting with knowledge of, or with disregard to, the fact that Defendants are in breach of their fiduciary duties to Bakkt and has participated in a conspiracy in breach of fiduciary duties.

138.    In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct. The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

139.    The Individual Defendants collectively and individually initiated and followed a course of conduct that: violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders; misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

140.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise Defendants' violations of law, including violations of the federal securities

laws and breaches of fiduciary duty.

141.   Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

142.   Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully requests, for an order:

A.   Declaring that Plaintiff may maintain this derivative action on behalf of Bakkt and that Plaintiff is a proper and adequate representative of the Company;

B.   Awarding all economic, monetary, actual, compensatory and punitive damages available at law, including damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.   Awarding prejudgment interest to the Company;

D.   Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

E.   Awarding to Plaintiff the costs and disbursements of the action,

including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

     F.     Granting such other and further relief as the Court deems just and proper.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury of all claims that can be so tried

Dated:  June 6, 2025          Respectfully submitted,

By: */s/ Andrew J. Shamis*_____
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (Ga. Bar No. 49496)
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com


**EDELSBERG LAW, P.A.**
Scott Edelsberg
(*pro hac vice* forthcoming)
Gabriel Mandler
(*pro hac vice* forthcoming)
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (786) 289-9471
Fax: (786) 623-0915
Email: scott@edelsberglaw.com
Email: gabriel@edelsberglaw.com

*Attorneys for Plaintiff Aryan Kaivani*